West'n. District.
*Sept'r.* 1829.

MILES
*vs.*
ODEN & AL.

Contracts are *governed* by the laws of the country in which they are passed: and by the comity of nations, are *en forced* according *to those laws,* by the state to which the parties have removed.

*Liens,* on land and slaves remaining in the hands of the owner or seller, have *no* effect against third persons, unless *they* are duly recorded.

*Liens,* existing on land or slaves in other states, are subject to the same rules of registering as in our own, when the parties come to this state to enforce such *liens.*

Where a creditor in Kentucky, *assents* that certain property of his debtor, may be taken to Louisiana, by an agent or trustee and sold, the proceeds to be applied to the payment of his *lien* and *debt,* he

*MILES vs. ODEN & AL.*

APPEAL from the court of the fifth district, the judge of the seventh presiding.

PORTER J. delivered the opinion of the court. The petitioner states, that he obtained a judgment against one Oden, in the state of Kentucky, on which judgment an execution issued, that was levied on property that was afterwards replevied under the laws of Kentucky, by the said Oden, he giving his bond, with a certain O. G. Waggoner as his security. That on the 7th of June 1820, Oden executed to Waggoner a mortgage upon the articles seized, among which were certain slaves. That the debt, due to the petitioner, is yet unpaid, and that in virtue of the seizure made under the execution in Kentucky, and the assignment from Waggoner, the petitioner has a lien on the property levied on.

That one Miller, of the state of Kentucky, has fraudulently caused the said property to be transported from the state of Kentucky to defraud the mortgagee, and has sold it to one Brent.

That Miller's title, if he had any, is subordinate to his: that the proceeds of the proper-

ty sold, were in fact due to Oden; Miller having lent his name to defraud the petitioner.

The petition concludes with a prayer, that Brent may be decreed to surrender up the negroes, or pay the price due for them to the plaintiff; and that an attachment may issue against Oden and Waggoner.

The attachment issued and was levied on the debt due by Brent.

Brent, who was thus made both defendant and garnishee, filed an answer in which he stated:

First: That he bought the negroes from a certain Morris L. Miller, in good faith, without any notice or knowledge of the plaintiff's claim: and if the said title should hereafter be declared fraudulent against Oden's creditors it cannot affect his rights, as he purchased in this state without knowledge of these transactions.

That the negroes purchased by him only formed a part of the property mortgaged to Waggoner, and that the plaintiffs must discuss the other portion of it in the state of Kentucky, before he can have recourse on that sold to the respondent.

cannot attack the sale of such agent as fraudulent, because by his subsequent misconduct he failed to receive the proceeds.

An agent or trustee, who is empowered to sell certain property and take a note payable to himself, may *legally sell such note to a third person*, although it be in fraud of the rights of his employers.

The purchaser of such note cannot be deprived of his right to it, without being repaid the money he gave for it.

It is a principle of the common law, that a *bona fide* purchaser, is not affected by *fraud in his vendor towards those from whom he obtained the property*, if he has a legal title to the thing sold.

*Interest* will *not* be allowed on a *note*, given for the purchase and price of slaves, when

West'n. District.
*Sept'r.* 1829.

MILES
*vs.*
ODEN & AL.

there is a contest between two adverse parties about the proceeds, until such contest is decided; because until *then,* the maker of the note is not considered in *mora.*

That the negroes were purchased by Miller at a sale made under an execution in favor of William Fletcher, and that admitting this sale to be fraudulent, it cannot affect the respondent's title, who bought without notice.

That one of the slaves is affected with redhibitory defects, and the price of this slave must be deducted from the sum due.

That on the 21st of April, he received a notice from L. and M. Commagere, who state themselves the holders of the note which the respondent gave to Miller, for the slaves now claimed by the petitioner, in which notice they demand payment for the same.

Brent's answers to interrogatories, given on oath, do not state that funds of the defendants were in his hands, but acknowledges a note to have been given for the slaves mentioned in the petition, on which a deduction should be made of $400 or $150, the price of one of the slaves, so affected with redhibitory diseases as not to be of any value.

On filing this answer the plaintiff prayed liberty to amend his petition, by making Miller, who sold to Brent, a party to the suit. In this amendment judgment is asked against

Miller, so far as to have the sale, made by him to Brent, cancelled and set aside, and the demand is reiterated that the negroes be seized and sold to satisfy the claim of the petitioner, or that there be judgment against Oden and Waggoner for the price of the negroes sold to Brent.

The court ordered Miller and Commagere to be made parties to the suit.

At this stage of the proceedings Raspalier intervened, and averred that he had purchased the note the defendant, Brent, had given for the slaves. That Miller's title to the property was *bona fide.* The petition of intervention concluded by demanding, that he might be decreed to be the only person entitled to receive the amount of said note with interest, and that judgment should be rendered in his favor against Brent.

Miller answered by denying any knowledge of Miles' having such a claim as that set up in the petition, and requiring him to furnish proof of it.

That Miles' mortgage is inferior to the title which the respondent acquired, because a long time previous to the date of the mort-

West'n. District.
Sept'r. 1829.

MILES
vs.
ODEN & AL.

gage to Waggoner, Oden executed a deed of trust to Harrison Blanton, the said deed of trust being for the purpose of securing Robert P. Letcher and others, against damage and loss, as securities for Oden. That Letcher commenced suit, recovered judgment and issued execution against Oden. That the respondent bought the slaves at the sale made in virtue of such execution; and that he did not send them out of the state of Kentucky to defraud the petitioner.

The answer further states, that the respondent being unwilling to speculate on the misfortunes of Oden, directed the proceeds of the sale of the slaves, sent by him to Louisiana, to be paid over to Oden's creditors.

The respondent also states, that Letcher has assigned to him the mortgage under which the slaves were sold: that Waggoner, under the mortgage, in virtue of which the petitioner claims, directed the execution at the suit of Letcher to be levied on the property which the respondent purchased: and finally, that the petitioner had ratified and approved the sale.

Brent amended his answer, by stating that the title under which Miller had sold the ne-

groes had been declared fraudulent, and pronounced null by a court of equity in Kentucky. That he believed the sale had been made with an intention to deceive him, and that he is threatened with many suits for the property.

Miller and Raspalier objected to this answer being filed, but the court received it.

The next change we find in the pleadings is that made by the plaintiff, amending the petition, and especially stating the facts attending the suit in Kentucky, which he averred, terminated by a decree annulling the sale to Miller.

The suit of Raspalier against Brent was consolidated with that in which the proceedings have been just stated, and on the consolidation being made, Brent filed another amended answer, in which, repeating all the facts already stated, he prayed that the sale might be annulled and avoided, it being fraudulent on the part of Miller.

Miller denied the allegation of Brent, and averred there was collision between him and Miles, the plaintiff, to cheat and defraud Raspalier.

Raspalier also amended the pleadings on his part, by repeating, or nearly so, the allegations of Miller.

On these pleadings the parties went to trial, and judgment was rendered in favor of the intervener. An appeal was taken to this court; the judgment was reversed, and the cause remanded, it appearing to have been tried without any answer having been put in on behalf of the defendant in attachment.— *Vol.* 6, 211.

On the return of the case to the district court, the pleadings were so amended as to present the *contestatio litis* between all the parties. Another trial was had which terminated as the first, by judgment being rendered in favor of Raspalier, the interpleader.

From this judgment Miles, the plaintiff, and Brent have appealed.

The plaintiff has placed his right to recover, before this court, on two principal grounds.

1st. That he had a lien on the property in Kentucky, which he has a right to enforce here.

2d. That the money, due by Brent for the negroes purchased from Miller, was in fact due by Oden and Waggoner, and that as

such his attachment levied on it, previous to any notification by Raspalier of his assignment, entitles him to judgment.

I. On the first ground, we are of opinion, that the lien, which the plaintiffs might have had in Kentucky, cannot affect a *bona fide* purchaser in this state. The court are aware of the common principle, that contracts are governed by the laws of the country in which they are passed; and that, by the comity of nations the rights, flowing from them, are not diminished by the parties passing into other states:—*Provided*, the laws of that state afford adequate remedies to enforce the obligation. But this principle is subject to the exception, that in carrying them into effect, no injury result to the inhabitants of the country whose aid is required to enforce them. We had occasion to express our views fully on this subject in the case of *Saul vs. his Creditors*, 6 *Mar. n. s.* ; and it is unnecessary to repeat here the reasoning on which we considered the limitation of the general principle to rest.

Our legislature have declared, that liens on land and slaves remaining in the possession of the owner, should not have effect against

West'n. District.
Sept'r. 1829.

Miles
vs.
Oden & al.

third persons, unless duly recorded. This rule was doubtless established to avoid the inconvenience and injury which parties, buying without notice of these liens, would sustain. Every reason, which supposes the necessity of such a regulation, as between our own citizens, applies with equal, if not greater force, to the inhabitants of another country, who came here to enforce liens given by the laws of the place, whence the property is brought.

*Huberus*, whose authority on this subject is justly entitled to great attention, after giving the limitation above noticed to the general rule, presents nearly this case as an example of it: and states that a mortgage, good on personal property in one country, cannot be carried into effect in another state, whose laws do not recognise such hypothecations. If this be true, where mortgages of this description are not recognized as having any legal effect, we think the same rule should apply where they are only permitted against third persons, on certain conditions—such as registry, &c. This writer, indeed, gives the case of a marriage contract, binding on creditors in one country without being enregister-

ed, as not being so if the parties remove into another, where publicity is required to be given to them by recording. His language in relation to mortgages is as follows: *Hypotheca conventionalis in re mobili dat jus prælationis etiam tertium possessorem jure Cæsaris et in Frisia, non apud Batavos. Proinde si quis ex ejusmodi hypotheca in Hollandia agat adversus tertium non audietur. Quia jus illi tertio in ista re mobili quæsitum per jus alieni territorii non potest auferri.*" In the translation given of this passage in 3, *Dallas*, the sense is somewhat obscured by the omission to state in what country the mortgage would not have its effect.—*Huberus de conflictu legum—Lib.* 1, *tit.* 3, *no.* 11,— 3, *Dallas,* 375—*in notis.*

II. This point disposed of, the right of the plaintiff to recover must rest on the strength of his pretensions to attach the debt due by Brent, as belonging to his debtors, Oden and Waggoner.

Oden, who was a citizen and resident of Kentucky, was indebted to a larger amount than he was able to pay. He was pressed by some of his creditors: among others, by the plaintiff in this suit. To avoid the sacrifice

West'n. District.
Sept'r. 1829.

MILES
vs.
ODEN & AL.

of his property, he procured an execution to issue at the suit of one of them, under which several of his slaves were seized and sold, and Miller became the purchaser. It is shewn clearly, that Miller's object in buying was to assist Oden and enable him to dispose of his property without too great a loss. That he had no intention of profiting by it. In pursuance of this object, the slaves purchased were sent down the river and sold to Brent, with the intention of applying the proceeds to the payment of the creditors in Kentucky. The plaintiff has attacked this act as fraudulent—insists, that by the laws of Kentucky it was null and void; and contends, that the money due by Brent being due in reality to Oden, he had a right to attack it as the creditor of Oden.

The real character of the transaction and its legal effect, according to the laws of Kentucky, have been the subject of most elaborate discussion at the bar. We do not find it necessary to go into the question. It is shewn, that after the slaves were sent down the river, and before they were sold, Miles, the present plaintiff, Letcher, another creditor of Oden's, and Oden, entered into an agreement, by

which, among other things, Miles consented and agreed to receive, in discharge of this debt, the proceeds of the slaves sent down the river by Miller, who, it is stated in the act, was the trustee of Oden. We are of opinion that the plaintiff, by his agreement, is precluded from saying the sale of the slaves was null and void; by consenting to take the proceeds of the sale, he sanctioned, as far as he could, the legality of the sale. It has been, indeed, contended, that by virtue of the stipulations in the instrument, Miles did not intend to waive any of his rights, in case the money was not paid to him. But the most attentive consideration of the agreement has failed to produce that conviction on our minds. It appears to us, that the reservations there made, relate to the property still remaining in Kentucky. And that there is nothing in it which would authorise us to say it was the intention of the parties, that the plaintiff should retain the right to attack the sale as fraudulent, in case he could not obtain the proceeds of it.

But there is another ground on which the plaintiff insists the attachment was properly levied. Miller, he says, was the trustee of Oden, and the debt due to him being for the

West'n. District.
*Sept'r.* 1829.

MILES
*vs.*
ODEN & AL.

benefit of the *cestui que trust*, as a creditor of the *latter*, he had a right to attach it. To this position the court assents; but his right to attach the equitable interest which Oden had in the funds, cannot, in our opinion, defeat a right which a third party had acquired from Miller, who had sold the negroes, and to whom the note given for them, was made payable, and in whom, consequently the legal title was vested. This is the position in which *Raspalier*, the *intervener*, is placed. He acquired *bona fide* from Miller. The note was, it is true, not negotiable, but it was a proper subject of sale; and although liable to all the equity existing between Miller, the payee, and Brent the maker, those persons who had entrusted Miller with the property, vested in him the legal title, and put him in a situation to hold himself out to the world as owner of the property, cannot deprive the purchaser of his rights without repaying to him the money which, as a consequence of the confidence reposed in the payee, he advanced. It is clear, that Oden could not do so.—His creditors cannot have greater rights, apart from the question of fraud, which is considered as waived, by the agreement of the plaintiff to be

paid out of the proceeds of the sale. We are unable to distinguish between the right of the purchaser of the property and the rights of that which the vendor obtained in lieu of it, whether it was a note or any other object.

Brent, in his amended answer, has prayed a rescission of the sale, on the ground that he has not acquired a good title; but we do not see any danger to which he is exposed on this score, that would authorise us to declare the contract void. We understand it to be a clear principle of the common law, under which this transaction took place; that a *bona fide* purchaser is not affected by fraud in his vendor, who has a legal title to the property sold. 6, *Cranch,* 133.

The court below gave interest on the note, and in this we think it erred. There was one party claiming a lien on the slaves and a right to the proceeds, as belonging to Oden and Waggoner. The other demanded the proceeds, in virtue of an assignment from Miller. This was such a disturbance in the title as well authorised Brent to refuse paying either. Placed in so much uncertainty as to whom he was to pay, he could not be considered in *mora.*

CASES IN THE SUPREME COURT

The court decided correctly in deducting the price of the negro Char'es, who had died, but the judgment must be reversed on account of the error in allowing interest.

It is therefore ordered adjudged and decreed, that the judgment of the district court be annulled, avoided and reversed. And it is further ordered, adjudged and decreed, that the intervener, C. Raspalier, do recover, against William L. Brent, the sum of two thousand three hundred and fifty dollars: and that the plaintiff, Charles Miles, pay all the costs of the proceedings, except those of appeal, which are to be paid by the intervener and appellee.

*Brownson* for the plaintiff. *Simon* for the defendants. *Bowen* for the interverner, Raspalier.